McGEHEE *v.* WILLIAMS.

4-4172

Opinion delivered November 11, 1935.

644

R. S. Wilson, for appellant.

Starbird & Starbird, Fadjo Cravens and Daily & Woods, for appellees.

JOHNSON, C. J. Under a Federal Government loan and grant by the Public Works Administration, the city of Fort Smith, Arkansas, is constructing a municipal waterworks system and plant including a large reservoir. This reservoir or the water supply will be obtained in the vicinity of the city of Alma, Crawford County, Arkansas. The impounded water will be conveyed through a 27-inch pipe and will pass in the vicinity of the city of Alma.

The city of Alma is likewise constructing a waterworks distributing system with funds procured from the same source from which Fort Smith obtained its funds. October 12, 1935, the two cities referred to, through their regularly constituted officers entered into the following written contract:

"WHEREAS, the city of Fort Smith, (Arkansas), pursuant to a loan and grant agreement with the United States of America (Public Works Administration), issued

revenue bonds under and pursuant to the provisions of act 131, of the Acts of 1933, as amended, and has acquired land for, and entered into construction contracts for the creation of, a lake or impounding reservoir, and the building of a filtration plant northeast of Mountainburg, in Crawford County, Arkansas, and has entered into construction contracts for the connection of said water supply (impounding reservoir) and filtration plant with the present water distribution system operated by the city of Fort Smith, Arkansas, in the city of Fort Smith, by means of a 27-inch steel pipeline; and

"WHEREAS, § 3 of Ordinance No. 1682 of the city of Fort Smith, providing for the issuance of said revenue bonds contemplates and provides for sale of water by the city of Fort Smith to other municipalities at contract rates; and

"WHEREAS, the incorporated town of Alma desires to own and construct an elevated water storage tank and water distribution system in the town of Alma, and to connect same by means of an 8-inch water pipeline to be owned and constructed by the town of Alma with the 27-inch pipeline now being constructed by the city of Fort Smith, and further desires to thereafter take and purchase water through said connection for the purpose of furnishing fire protection to the town of Alma and the property located therein, and for the purpose of furnishing and selling water to domestic, commercial and industrial consumers in said town:

"Now, therefore, this agreement witnesseth:

"The parties agree that the town of Alma may at its sole expense construct said elevated water storage tank, distribution system, and 8-inch pipeline, and may connect said 8-inch pipeline to be constructed, and owned by the town of Alma, with the 27-inch pipeline now being constructed by the city of Fort Smith. Said connection shall be made at or near the settlement of Rudy, in Crawford County.

"The town of Alma shall at its sole expense install all necessary valves at or near said connection to the end that the flow of water through said 8-inch pipeline may be controlled and/or shut off and turned on, and the

town of Alma shall at its sole expense install a meter house at or near said connection and shall at its sole expense furnish and deliver at said meter house a 6-inch protectus meter (or equivalent) to be used in measuring water delivered to it through said connection.

"The city of Fort Smith shall at its own expense set and connect said meter and shall thereafter repair and maintain same. Said meter shall be installed in said meter house, which shall be located at or near the connection of said 8-inch pipeline with said 27-inch pipeline.

"The town of Alma shall within thirty (30) days from the date of this contract furnish plans and specifications for said meter house and valves, and said plans and specifications shall show the exact location of the point of connection and the exact location of said meter house and valves, and said plans and specifications shall be subject to the written approval of Commissioner No. 2 of the city of Fort Smith, and said connection shall not be made until said plans and specifications shall have been approved by said commissioner.

"Subject to the agreements and conditions hereinafter set out, the city of Fort Smith agrees to sell and deliver water to the town of Alma through said connection and meter at the prices and upon the terms hereinafter set out, and the town of Alma agrees to purchase and take water through said connection and meter at the prices and upon the terms hereinafter set out.

"The town of Alma agrees to pay to the city of Fort Smith ten cents per thousand gallons for the first 250,000 gallons of water delivered through said connection and meter in any calendar month, and six cents per thousand gallons of water over 250,000 gallons delivered through said connection and meter in any calendar month, provided that the town of Alma further agrees to pay a minimum of at least twenty-five dollars ($25) each calendar month during the life of this contract.

"The town of Alma agrees to pay on or before the 20th of each month at the prices and minimum specified above for water delivered during the preceding calendar month, and expressly agrees that on its failure to do so the city of Fort Smith, after giving ten days' notice by

registered mail addressed to the mayor of the town of Alma, may cut off said water by means of the valves installed at or near said connection and may cease furnishing water under this contract. In the event said connection is closed pursuant to this section, then the city of Fort Smith shall not be obligated to reopen said connection until all unpaid bills plus ten dollars ($10) to cover cost of reopening said connection shall have been paid by the town of Alma.

"This contract shall run for a period of twenty (20) years from the date said connection is made."

This suit was instituted in the Crawford Chancery Court by appellants, citizens and taxpayers of the city of Alma to restrain and enjoin the further performance of the said contract by the respective parties for the reason that it is illegal, *ultra vires* and void.

The two cities demur to the complaint thus filed, and the trial court sustained the same, and the case is here for review on appeal.

Appellants' first contention is that the city of Alma is without power or authority in law to purchase a water supply for distribution to the inhabitants from another city. Section 7564 of Crawford & Moses' Digest, when construed with § 2 of act 131 of 1933, confers the express power upon municipalities to provide a water supply for their inhabitants by constructing or acquiring by purchase or otherwise, wells, pumps, reservoirs, or waterworks, or any integral part thereof; to regulate the same and to this end may go beyond its territorial limits to accomplish these purposes. It is thus seen that the power to supply water to the inhabitants of a town or city situated in this State is expressly granted by the statutes, and it necessarily follows from this that the means of acquiring such water supply is incidental to the express power conferred and is therefore certainly and definitely implied. *Brown* v. *Bentonville*, 94 Ark. 80, 126 S. W. 93.

This conclusion is irresistible when we consider that by § 2 of act 131, *supra*, the law as it then existed was amended to provide that waterworks should be construed

to mean waterworks system in its entirety or any integral part thereof.

This conclusion means that the city of Alma has the power and authority, under the statutes referred to, to acquire by purchase or otherwise a water supply for distribution to its inhabitants from any source and may contract to this effect.

A number of cases from other jurisdictions are urged upon us as decisive of the doctrine that municipalities are without power to act save in cases where authority is expressly granted. See *Childs* v. *Columbia,* 87 S. C. 566, 70 S. E. 296, 34 L. R. A. (N. S.) 542; *Farwell* v. *Seattle,* 43 Wash. 141, 86 Pac. 217, 10 Ann. Cas. 130. But such does not appear to be the doctrine of general application. See 19 R. C. L. 768, which states the generally accepted rule as follows: "It is well settled that a municipal corporation has only such powers as are clearly and unmistakingly granted to it by its charter or by other acts of the Legislature, and consequently can exercise no powers not expressly granted to it, except those which are necessarily implied or incident to the powers expressly granted and those which are indispensable to the declared objects and purposes of the corporation."

Appellants next urge that the city of Fort Smith is without power in law to contract for the sale of water to the city of Alma. *Kearny* v. *Payonee,* 90 N. J. Eq. 499, 107 Atl. 169, and other cases are cited in support of this contention. The courts generally seem to be divided on this question, but we conceive that we are not now at liberty to review the many cases pro and con on this question. In *Armour* v. *Fort Smith,* 117 Ark. 214, 174 S. W. 234, we expressly held, quoting from the headnote, that, "A city took over the control of the water supply and system of Water District No. 1. Later, District No. 2 was organized covering other territory in the city not covered by District No. 1. *Held,* the city had authority to permit District No. 2 to connect with the mains of District No. 1, and to sell water to the said District No. 2, where there was an ample supply of water, and the city made money by the transaction." True, the case last referred to did

not involve the identical question here presented, but the legal principle there stated cannot be distinguished from the one here presented, upon sound reason or logic. We conclude, therefore, that the city of Fort Smith has the power in law to sell its surplus water to inhabitants located without the city limits, and to this end has power and authority to execute a contract.

Appellants also contend that this contract is in violation of Amendment No. 10 to the Constitution of 1874. This contention is grounded upon the theory that the water rentals due under the contract would be a charge against the general revenues of the city of Alma during the life of the contract. We do not so construe the contract. The rentals therein provided are to be paid from the revenue derived from the distribution of the water supply. When the contract is thus construed, it can in no event offend the amendment. We so expressly held in *McCutchen* v. *Siloam Springs,* 185 Ark. 846, 49 S. W. (2d) 1017. See also *Ozark* v. *Ozark Water Co.,* 190 Ark. 872, 81 S. W. (2d) 920.

Nor can we agree with appellants that the fact that the incomes and physical properties of both city projects are pledged for the payment of the bonds and interest to the Federal agency, renders this contract illegal and void. This contract, as we understand, is fully recognized and authorized in the respective ordinances creating these projects and is a part and parcel thereof, and, in the event of insolvency or change of ownership of either water system, the receiver or purchaser thereof must take notice that the property is burdened with this contract. See *Warmack* v. *Major Stave Company,* 132 Ark. 173, 200 S. W. 799.

No error appearing, the judgment is in all things affirmed.